IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

UNITED STATES OF AMERICA,

v.  Criminal Action No. 3:18-CR-61
    (Chief Judge Groh)

WILLIAM LOREN HOFFMAN, III,

      Defendant.

### NOTICE OF RULE 404(B) EVIDENCE

The United States provides notice that it intends to introduce the following evidence under Rule 404(b) of the Federal Rules of Evidence: testimony, physical evidence, and audio/video evidence regarding a straw purchase of handguns to an out-of-state resident between two undercover special agents and Defendant William Loren Hoffman, III, which occurred on January 18, 2018.

### I.  Background

On November 20, 2018, a federal grand jury sitting in Martinsburg, West Virginia returned a four-count indictment against Defendant William Loren Hoffman, III (hereinafter referred to as "Defendant" or "Hoffman"). ECF 1. Defendant was charged with two counts of Sale to a Prohibited Person in violation of Title 18, United States Code, Sections 922(d) and 924(a)(2). *Id.* Defendant was also charged with two counts of making false entry in records by federal firearms dealer in violation of Title 18, United States Code, Sections 922(m) and 924(a)(3)(B). *Id.*

### II.  The Gun Control Act

The Gun Control Act of 1968 (the "GCA"), *codified as amended* at 18 U.S.C. §§ 921–931 (2006), was passed "in order to regulate interstate firearms transactions, primarily through licensing requirements on firearms businesses." *Nat'l Rifle Ass'n v. Brady*, 914 F.2d 475, 477 (4th

1

Cir. 1990). The "focus of the federal scheme is the federally licensed firearms dealer," *United States v. Huddleston*, 415 U.S. 814, 825 (1974). Regulations with respect to such dealers are designed "principally to prevent guns from falling into the wrong hands," *Abramski v. United States*, 134 S. Ct. 2259, 2263 (2014).

The Gun Control Act defines classes of prohibited people—such as, felons, fugitives, illegal aliens, and those who have been convicted of misdemeanor crimes of domestic violence— and restricts their access to firearms by making it a felony both for such prohibited persons to possess a firearm, 18 U.S.C. § 922(g), and for "any person to sell or otherwise dispose of" a firearm to such prohibited persons, 18 U.S.C. § 922(d). *See United States v. Parker*, 262 F.3d 415, 422 (4th Cir. 2001) (noting that 18 U.S.C. § 922(g)(1) "forbids certain convicted felons from possessing firearms or ammunition, just as § 922(d)(1) forbids knowingly transferring firearms or ammunition to these felons" (citing *United States v. Essick*, 935 F.2d 28, 29 (4th Cir. 1991))).

In order to enforce this prohibition, the Act "establishes a detailed scheme to enable the dealer to verify, at the point of sale, whether a potential buyer may lawfully own a gun." *Abramski*, 134 S. Ct. at 2263. Federally licensed firearms dealers are subject to strict recordkeeping requirements designed "to enable federal authorities both to enforce the law's verification measures and to trace firearms used in crimes." *Id.* (citing H.R. Rep. No. 1577, 90th Cong., 2d Sess., 14 (1968)); *see also* 18 U.S.C. § 923 (requiring each licensed dealer to "maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe). Pursuant to the power granted by this statutory provision, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") created the Form 4473, which requires a firearms purchaser to record relevant identifying information, "lists all the factors disqualifying a person

from gun ownership," "asks the would-be buyer whether any of them apply," and mandates that the potential buyer certify that he is, in fact, the actual buyer of the firearm in question. *Abramski*, 134 S. Ct. at 2263–64. Accordingly, as the Supreme Court has held, the information compelled by Form 4473 is the type of information that a licensed firearms dealer is required by law to maintain in his records. *Id.* at 2274.

Straw purchases are also prohibited under the Gun Control Act. "Straw purchase transactions involve the purchase of a firearm by an individual legally eligible to make the purchase (the straw) with the intent to immediately transfer the gun to another individual who is legally ineligible to purchase the weapon (the actual purchaser)." *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1293 (11th Cir. 2008). A straw purchase arrangement is designed to circumvent federal background check requirements created to keep firearms out of the hands of prohibited persons:

> [C]onsider what happens in a typical straw purchase. A felon or other person who cannot buy or own a gun still wants to obtain one. (Or, alternatively, a person who could legally buy a firearm wants to conceal his purchase, maybe so he can use the gun for criminal purposes without fear that police officers will later trace it to him.) Accordingly, the prospective buyer enlists an intermediary to help him accomplish his illegal aim. Perhaps he conscripts a loyal friend or family member; perhaps more often, he hires a stranger to purchase the gun for a price. The actual purchaser might even accompany the straw to the gun shop, instruct him which firearm to buy, give him the money to pay at the counter, and take possession as they walk out the door.... What the true buyer would *not* do—what he would leave to the straw, who possesses the gun for all of a minute—is give his identifying information to the dealer and submit himself to a background check.

*Abramski*, 134 S. Ct. at 2267–68; *see also United States v. Wegg*, 919 F. Supp. 898, 899 (E.D. Va. 1996) (noting that straw purchases "occur when an individual purchases firearm for another but fills out the paperwork for himself or herself").

### III. Summary of 404(b) Evidence

The United States seeks to introduce 404(b) evidence related to a straw purchase that

3

occurred on January 18, 2018. Specifically, the United States intends to introduce testimony of two undercover special agents, audio/video evidence, the purchased firearms, and the 4473 forms for the transactions.

On January 18, 2018, Special Agent Nasir Sessoms and Special Agent Sabrina Hager, acting in an undercover capacity, facilitated the purchase of two pistols from Hoffman. SA Sessoms and SA Hager were equipped with recording equipment. SA Sessoms and SA Hager then traveled to Frazier's Pawn Shop. At approximately 10:52 a.m., SA Sessoms and SA Hager arrived at Frazier's Pawn Shop and entered the store.

SA Hager identified Hoffman standing behind the sales counter conversing with a different customer. SA Hager waved at Hoffman, and Hoffman acknowledged her. SA Sessoms and SA Hager then began to look at firearms located in a floor display case. David Frazier, the owner of the pawn shop, walked over to SA Hager and SA Sessoms and asked if they needed some help. SA Hager stated she was just looking around. Frazier then asked Hager if they were waiting on Hoffman, and SA Hager replied that she was waiting on Hoffman. Hoffman again acknowledged SA Hager and stated he would be with her in a moment. Shortly after, Hoffman approached SA Hager saying he remembered her face.

Hoffman then asked SA Hager, "So whatcha looking for today." SA Hager replied she was looking for some handguns and used hand gestures to direct Hoffman to SA Nessoms as the person to address in regards to the firearms.

SA Nessoms then pointed to a FN 9mm handgun (SN: GKU0026569) located in the case. Hoffman verbally verified the firearm, handed the firearm to SA Nessoms, and discussed the FN 9mm handgun.

SA Nessoms then communicated to Hoffman that he was also interested in a Springfield

.45 caliber handgun (SN:GM403521). Hoffman retrieved the firearm, demonstrated its functionality, and handed it to SA Nessoms. SA Nessoms confirmed he liked both firearms.

Hoffman then asked SA Nessoms, "What state are you from." SA Hager interjected that she would be handling the transaction. Hoffman demanded that SA Nessoms and SA Hager listen to his explanation and cautionary advice. Hoffman again asked SA Nessoms what state he was from. SA Nessoms stated he was from Maryland. Hoffman then warned SA Hager, "That if you get it under your name and you give it to him and it's not registered in Maryland, it's a felony in Maryland. It has to be transferred to him as a Maryland resident. If it isn't transferred to him as a Maryland resident . . . ," Hoffman then turns to SA Nessoms stating, ". . . and you get caught with it and it's unregistered, you're going to jail for a long time in Maryland . . . but the fact you're a Maryland resident . . . ." Hoffman turned to address SA Hager and stated, "If you buy it, it's classified as a straw purchase and then if he gets caught with it, it's under your name, you're looking at ten years." Hoffman continues to explain to SA Nessoms and SA Hager the legality and consequences of illegal firearm transfers. At the end of his explanation, Hoffman states to SA Hager, "So what do you want to do today with the fact that I explained all that to you?"

SA Hager asked SA Nessoms if he was satisfied with the two previously chosen firearms. SA Nessoms stated he was. SA Hager then directed Hoffman to the two firearms. Hoffman retrieved the firearms and placed an ATF Form 4473 in front of SA Hager. SA Hager completed the form. SA Hager asked Hoffman if she filled it out correctly. Hoffman reviewed it and requested SA Hager to sign the form.

After SA Hager signed the 4473, Hoffman and SA Hager continued in general conversation while SA Nessoms took possession of the firearm cases and placed them on top of the counter in front of him. Hoffman took SA Hager's identification and the completed Form 4473. Hoffman

advised he was charging $425.00 for the Springfield 45ACP and $545.00 for the FN 9mm. SA Sessoms paid for the firearms, and a cashier provided SA Sessoms with a printed sales receipt.

After purchasing the firearms and in front of Hoffman, SA Nessoms opened each of the gun cases to inspect the firearms and accessories. SA Nessoms attempted to take possession of the cases in front of Hoffman. However, Hoffman advised SA Nessoms that SA Hager had to carry the firearms out of the store because she was the purchaser of record. SA Hager took possession of the firearms and both SA Nessoms and SA Hager left the store. SA Nessoms and SA Hager turned over the evidence—one Springfield pistol Model XD-45ACP, .45 ACP Caliber, SN:GM403521; one FN pistol Model FNS-9, 9mm caliber, SN GKU0026569; two receipts for a firearms transaction at Frazier's Pawn Shop; and audio/video evidence—to agents at the ATF Martinsburg field office.

## IV. Analysis

Testimony regarding the June 18, 2018 straw purchase is admissible as Rule 404(b) evidence. Rule 404(b) provides that evidence of a prior bad act may be admissible to demonstrate "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). "Rule 404(b) is an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *United States v. Stewart*, 628 F. App'x 179, 181 (4th Cir. 2015) (quoting *United States v. Wilson,* 624 F.3d 640, 651 (4th Cir. 2010) (internal quotation marks omitted)). Evidence of prior bad acts is admissible under Rule 404(b) if the evidence is (1) relevant to an issue other than the general character of the defendant; (2) necessary to prove an element of the charged offense; and (3) reliable. *See United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). Additionally, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid.

403; *Queen*, 132 F.3d at 997.

Evidence regarding the June 18, 2018 straw purchase satisfies the four-prong test for admission under Rule 404(b). ***First***, this testimony is admissible because it proves knowledge and intent. Fed. R. Evid. 404(b). It is being offered for non-propensity purposes. In this case, the testimony demonstrates that Hoffman knew the firearm laws, could define a straw purchase, and knowingly chose to violate these laws. The evidence shows knowledge, intent, and absence of mistake. *See United States v. Hodge*, 354 F.3d 305 (4th Cir. 2004) (holding that the district court properly permitted the government to introduce evidence of prior drug transactions because it "tended to show the existence of a continuing narcotics business and therefore to show [defendant's] knowledge of the drug trade and his intent to distribute the cocaine found in his Jeep.").

***Second***, the United States must show Defendant knowingly sold a firearm to a person in violation of the Gun Control Act. Counts One and Three of the Indictment charge Hoffman with the sale or transfer of a firearm to a prohibited person in violation of 18 U.S.C. § 922(d). The United States must prove that Hoffman knowingly sold or otherwise disposed of a firearm to a person he knew or had reasonable cause to believe was prohibited. Counts Two and Four of the Indictment charge Hoffman with making a false entry or failure to make entry in records by a federal firearms dealer in violation of 18 U.S.C. § 922(m). Under this section, the United States must prove that defendant knowingly failed to make an appropriate entry as required by federal law.

Therefore, the United States must prove Defendant's intent and knowledge at trial. *See United States v. White*, 307 F. App'x 764, 765 (4th Cir. 2009) (upholding a district court's ruling to admit prior bad act evidence because the defendant "pled not guilty to the crimes with which he

was charged" and "placed his mental state in issue," thereby authorizing the Government "to offer evidence of prior bad acts tending to establish his intent and knowledge regarding the drugs found in the apartment where he stayed on a regular basis"); *United States v. Mark*, 943 F.2d 444, 448 (4th Cir. 1991) (holding that, when extrinsic act evidence is "sufficiently related" to the charged offense, the evidence is relevant to show that the defendant "possessed the same state of mind in the commission of both").

***Third***, the evidence is reliable. SA Nessoms and SA Hager will testify regarding the January 18, 2018 transaction. SA Nessoms and SA Hager will be under oath and available for cross examination. Moreover, there is audio/video evidence of the transaction, which includes many statements made by Defendant. These are Defendant's admissions.

***Fourth***, the probative value of the evidence is not substantially outweighed by the danger of confusion or unfair prejudice. The evidence is highly relevant and probative of Defendant's intent and knowledge to commit the charged offenses. Although the evidence is certainly prejudicial, it is not unfairly prejudicial. *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006) (noting that "all evidence suggesting guilt is prejudicial to a defendant."); *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008) ("[G]eneral prejudice, however, is not enough to warrant exclusion of otherwise relevant, admissible evidence.").

Accordingly, testimony and evidence of the January 18, 2018 straw purchase should be admitted because the evidence is offered to establish knowledge and intent under Federal Rule of Evidence 404(b).

Respectfully submitted,

WILLIAM J. POWELL
UNITED STATES ATTORNEY


By: /s/ Lara K. Omps-Botteicher
Lara K. Omps-Botteicher
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I, Lara K. Ompsteicher, Assistant United States Attorney for the Northern District of West Virginia, hereby certify that on March 19, 2019, the foregoing *United States' Notice of 404(b) Evidence* was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

S. Andrew Arnold
208 N. George Street
Charles Town, WV 25414

        Respectfully submitted,

        WILLIAM J. POWELL
        UNITED STATES ATTORNEY

By:   /s/ Lara K. Ompsteicher
      Lara K. Ompsteicher
      Assistant United States Attorney